IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

JAMES R. MELTON, as surviving )
spouse of Wendy Riner Melton, )
deceased, )
)
Plaintiff, )
)
v. ) CASE NO. CV416-275
)
GREAT WEST CASUALTY COMPANY; )
GEORGIA FREIGHTWAYS )
CORPORATION; CMA-CGM )
(AMERICA), LLC; SOUTH )
ATLANTIC CONSOLIDATED CHASSIS )
POOL LLC; CONSOLIDATED )
CHASSIS MANAGEMENT LLC; )
INTERPOOL, INC., d/b/a Trac )
Intermodal; DIRECT )
CHASSISLINK, INC.; and DAVID )
J. GIBBONS; )
)
Defendants. )
)

## O R D E R

Before the Court is Plaintiff James R. Melton's Motion to Remand. (Doc. 6.) For the reasons that follow, Plaintiff's Motion is **GRANTED** and this case is **REMANDED** to the State Court of Chatham County, Georgia. Because this case is remanded to the State Court, all pending motions (Doc. 41; Doc. 42) are **DISMISSED AS MOOT**. The Clerk of Court is **DIRECTED** to close this case.

## BACKGROUND

This case involves the tragic death of Wendy Riner Melton in a horrible vehicle accident caused by a tractor trailer colliding with stopped traffic along Interstate-16 at the interchange with Interstate-95. (Doc. 5 at 2.) The tractor trailer was being driven by Defendant Gibbons, whom was employed by Defendant Georgia Freightways Corporation. (Doc. 1, Attach. 1 at 24.) Defendant Great West Casualty Company provided insurance coverage for Defendant Georgia Freightways. (Id. at 23.) The remaining defendants all had some connection to the shipping container. (Id. at 27-30.)

In the complaint, Plaintiff alleges that Defendant Gibbons negligently operated the tractor trailer, which resulted in the collision. (Id. at 24.) Plaintiff supports this claim by citing various statutory and regulatory provisions that he alleges Defendant Gibbons violated. While most are Georgia statutes, Plaintiff does contend that Defendant Gibbons was "so impaired by fatigue or illness as to make it unsafe for him to begin or continue to operate the commercial motor vehicle in violation of 49 C.F.R. § 392.3, which is negligence as a matter of law." (Id.) Plaintiff also maintains that Defendant Gibbons "[v]iolated such additional provisions of [] the Federal

2

Motor Carrier Safety Regulations as may be determined through discovery and proven at trial." (Id. at 25.)

Plaintiff also alleges that Defendant Georgia Freightways, Inc. was independently negligent based on several violations of the Federal Motor Carrier Safety Regulations. (Id. at 25-26.) Plaintiff maintains that Defendants Direct Chassislink, Inc., South Atlantic Consolidated Chassis Pool LLC, and Interpool, Inc. are liable because Defendant Gibbons qualifies as their statutory employee by operation of several federal regulations setting forth requirements for intermodal equipment providers, motor carriers, and drivers operating intermodal equipment. (Id. at 28-29.) Finally, Plaintiff contends that Defendant CMA-CGM (AMERICA), LLC is vicariously liable "as an ocean common carrier by virtue of 46 USC § 40102(6)(A)." (Id. at 32.)

Defendants removed this case from the State Court of Chatham County on the grounds that the complaint raised substantial questions of federal law, specifically whether Defendants violated the Shipping Act of 1984 or the Federal Motor Carrier Safety Administration Regulations. (Doc. 1 ¶¶ 10-11.) Defendants reason that because resolution of Plaintiff's negligence claims will require interpretation of federal statutes and regulations, this Court is

3

empowered to adjudicate Plaintiff's claim under its federal question jurisdiction. See 28 U.S.C. § 1331. In his Motion to Remand, Plaintiff argues that the Shipping Act, Motor Carrier Act, and associated regulations do not create independent federal causes of action. (Doc. 6 at 5.) According to Plaintiff, reference to these federal sources does not operate to turn his basic state-law negligence claim into a substantial federal question sufficient to trigger this Court's jurisdiction. (Id.)

**ANALYSIS**

I. <u>COLLATERAL ESTOPPEL</u>

In this case, Plaintiff filed a Supplemental Memorandum in Support of Motion to Remand. (Doc. 29.) In that filing, Plaintiff argues that this Court is bound by a previous ruling remanding a related case. (Id. at 2.) That case is one of six that involves the same facts and defendants. Those cases were all filed in state court around the same time, and also removed to federal court around the same time. The Clerk of Court assigned five of those cases to this Court, while one case was assigned to Judge Wood. Ultimately, Judge Wood granted the plaintiff's motion to remand and remanded that case to state court. (CV416-276, Doc. 28.) Plaintiff argues that collateral estoppel applies to preclude any different outcome in any

4

of the related cases, including this one. (Doc. 29 at 2.) Therefore, Plaintiff "respectfully urge[s] that the Court enter an order consistent with Judge Wood's order." (Id.) After being directed to file a response, Defendants responded in opposition to Plaintiff's request. (Doc. 51.)

After careful consideration, the Court easily concludes that collateral estoppel is inappropriate in this case. The Eleventh Circuit Court of Appeals recognizes that

> [b]oth issue preclusion and claim preclusion operate across a two-lawsuit continuum. First, parties litigate a dispute to a final judgment on the merits. Second, in a later, separate suit between the parties, one party brings to court evidence of an earlier judgment and contends that issue or claim preclusion should apply to prevent her opponent from litigating a previously decided issue or cause of action.

Graham v. R.J. Reynolds Tobacco Co., 857 F.3d 1169, 1214 (11th Cir. 2017). Judge Wood's case was not prior litigation, but a contemporaneously filed case. In other words, the case pending before this Court is not "a later, separate suit between the parties". Id. Accordingly, collateral estoppel does not operate to bar the Court from considering the merits of Plaintiff's Motion to Remand because no prior decision existed at the time Plaintiff filed this case.

II. MOTION TO REMAND

A defendant who removes a case to federal court bears the burden of proving the propriety of federal jurisdiction. Adventure Outdoors, Inc. v. Bloomberg, 552 F.3d 1290, 1294 (11th Cir. 2008) (quoting Leonard v. Enter. Rent a Car, 279 F.3d 967, 972 (11th Cir. 2002)). If a district court has reservations as to the existence of federal jurisdiction, that doubt must be resolved in favor of remanding the case to state court. Id. (citing Diaz v. Sheppard, 85 F.3d 1502, 1505 (11th Cir. 1996)).

Congress has conferred to federal district courts original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The most obvious example of a case arising under federal law is where a plaintiff pleads a cause of action that is created by federal law. See Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 814 (1986); see also Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005). However, a plaintiff's claim need not be created by federal law to invoke the district court's original jurisdiction. A complaint alleging a state-law claim may still invoke federal jurisdiction if "a well-pleaded complaint establishes . . . that the plaintiff's right to relief necessarily depends on

resolution of a substantial question of federal law." Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 690 (2006) (quoting Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 27-28 (1983)). While not an automatic grant of jurisdiction, a state-law claim may fall under the original jurisdiction of federal district courts if the court must interpret an important federal law when deciding whether a plaintiff is entitled to relief. Id.

The Supreme Court has crafted a two-part test for determining whether a state-law claim that requires interpretation of a federal law triggers federal jurisdiction. First, the state-law claim must require the resolution of a substantial and disputed question of federal law. Grable, 545 U.S. at 314; Adventure Outdoors, 552 F.3d at 1295. Second, a district court must not upset "any congressionally approved balance of federal and state judicial responsibilities" in adjudicating the dispute. Grable, 545 U.S. at 314; Adventure Outdoors, 552 F.3d at 1295. The Supreme Court has noted that it is a slim category of cases that will meet this test. Empire, 547 U.S. at 701.

In determining whether a claim requires the resolution of a substantial and disputed question of federal law, the

7

Supreme Court has looked to whether interpretation of the federal issue would resolve an essential element of the state-law claim. Id. In fact, the interpretation of a federal statute in Grable was the "only legal or factual issue contested in the case." Id. Also, a federal question is substantial and important where "its resolution is both dispositive of the case and would be controlling in numerous other cases." Empire, 547 U.S. at 700. In addition, the Supreme Court has looked to the interest of the federal government in a proper and consistent interpretation of the federal issue. Grable, 545 U.S. at 315.

To assess whether asserting jurisdiction would upset the balance of federal and state responsibilities, the Supreme Court has considered the frequency that state-law issues will be decided in federal court should the court find jurisdiction. Id. Federal jurisdiction is not warranted if it would result in traditional state-law issues being routinely litigated in federal courts. Also, the Supreme Court has looked at whether a state court is competent to interpret and apply any relevant federal law when adjudicating a traditionally state-law claim. Empire, 547 U.S. at 701.

Both <u>Grable</u> and <u>Empire</u> illuminate the distinctions between substantial and unsubstantial federal questions. In <u>Grable</u>, the plaintiff initiated an action to quiet title to real property purchased by the defendant at an IRS tax delinquency sale. 545 U.S. at 310-11. The IRS served plaintiff with notice, via certified mail, that it was seizing his property. <u>Id.</u> at 311. The plaintiff filed the quiet-title action in state court, arguing that the sale was ineffective because the governing statute, 26 U.S.C. § 6335(a), required that he be personally served with notice. <u>Id.</u> Defendant removed the case to federal court, asserting that federal question jurisdiction existed because resolution of the case depended on the interpretation of the federal statute. <u>Id.</u>

After crafting the two-part test, the Supreme Court held that the district court properly exercised federal jurisdiction. <u>Id.</u> The Court noted that "[t]he meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court." <u>Id.</u> at 315. In addition, the Court observed that the federal government has a strong interest in preserving its ability to collect delinquent taxes by seizing and selling real property. <u>Id.</u> Also, the plaintiff's right to relief turned on only the resolution of a singular legal issue—the interpretation of

9

the federal statute. Id. The interpretation of the federal question was not a fact-bound determination, and "was both dispositive of the case and would be controlling in numerous other cases." Empire, 547 U.S. at 700 (discussing Grable).

In Empire, the plaintiff was an insurance carrier that managed a health plan for federal employees, making it subject to the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. §§ 8901-8914. 547 U.S. at 683. The defendant, an insured under the health plan, negotiated a settlement with the parties responsible for his injuries after he received payment from the insurer under the plan's terms. Id. The insurer filed suit in federal court seeking reimbursement for medical care provided under the terms of the plan. The defendant argued that the federal court lacked subject matter jurisdiction because the cause of action was for breach of contract—a state-law claim. The plaintiff asserted that federal question jurisdiction was proper because a determination of plaintiff's right to relief depended on an interpretation of the FEHBA, which required the application of federal common law.

In Empire, the Supreme Court applied the Grable test and found that federal question jurisdiction did not exist. The Court observed that the controversy in Empire concerned

10

a settlement agreement between private parties, not an action by a government agency. Id. at 700. Also, the Court noted that resolution of the federal question in Empire would be "fact-bound and situation-specific," rather than the pure issue of law presented in Grable. Empire, 547 U.S. at 700. Therefore, resolution of the federal question in Empire would not have the same conclusory effect on other similar cases. Id. In addition, the Court was concerned that exercising federal jurisdiction in Empire may upset the delicate federal-state balance envisioned by Congress by moving personal injury claims, typically litigated in state courts, to federal courts. Id.

While this case lies somewhere in between Grable and Empire, the factors outlined by the Supreme Court place it far closer to Empire. An analysis of the factors as they relate to this case indicate that Plaintiff's right to relief does not "necessarily depend[] on resolution of a substantial question of federal law." Empire, 547 U.S. at 690. A simple interpretation of whether Defendants violated a federal statute or regulation is not the dispositive issue in this case, but only one analytical step toward assessing Plaintiff's negligence based claims. Ultimate resolution of these claims involves substantial issues of state law, a task best left to state courts. This is far

11

from the singular dispositive issue of federal law presented in Grable, where the federal issue was "the only legal or factual issue contested in the case." 545 U.S. at 315.

Also, it is unlikely that this Court's interpretation of the relevant statutes and regulations would be either dispositive in this case or controlling in many others. Unlike Grable, this Court would be required to make several determinations based on facts unique to this case. For example, Plaintiff's theories of negligence also rely on a multitude of state laws. As a result, any decision by the Court with respect to the federal statutes and regulations may ultimately play little part in determining the negligence of any single Defendant. Therefore, this Court's resolution of the controversy presently before it is unlikely to be controlling in other cases because of the factually sensitive nature of the inquiry.

Finally, while the Federal Government does have some interest in the outcome of this case, the Government's interest here is significantly less that its interest in Grable. In this case, the dispute is exclusively between private parties and chiefly concerns the negligence of numerous parties based on a variety of theories. Again, this stands in stark contrast to Grable, where the dispute

"centered on the action of a federal agency (IRS) and its compatibility with a federal statute." Adventure Outdoors, 552 F.3d at 1296.

This case also fails the second prong of the Grable test because allowing Defendants to remove this case to federal court would upset the "congressionally approved balance of federal and state judicial responsibilities." 545 U.S. at 315. The Supreme Court has been explicit in addressing the balance of federal and state judicial responsibilities relating to negligence claims invoking federal law:

> [A] complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim "arising under the Constitution, laws, or treaties of the United States."

Merrell, 478 U.S. 804, 817 (1986) (quoting 28 U.S.C. § 1331)). Allowing Defendants to remove Plaintiff's straightforward negligence claims to federal court based on a possibility that their resolution might touch upon federal law would disturb the balance articulated by the Supreme Court by allowing a broad category of traditionally state-law claims to be brought in a federal forum. See Empire, 547 U.S. at 700 (expressing concern that permitting

personal injury claims to be removed would upset delicate federal-state balance envisioned by Congress).

For all of these reasons, this Court has serious reservations about its power to adjudicate Plaintiff's claims. Because Defendants have failed to meet their burden of establishing federal jurisdiction, this Court must grant Plaintiff's Motion to Remand and return this case to the State Court of Chatham County, Georgia.[1]

**CONCLUSION**

After careful consideration, Plaintiff's Motion to Remand to State Court (Doc. 6) is **GRANTED** and this case is **REMANDED** to the State Court of Chatham County, Georgia. Because this case is remanded to the State Court, all pending motions (Doc. 41; Doc. 42) are **DISMISSED AS MOOT**. The Clerk of Court is **DIRECTED** to close this case.

SO ORDERED this 29th day of September 2017.

_____
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[1] Plaintiff withdrew the request for attorney's fees included in their Motion to Remand. (Doc. 52.) Therefore, the Court will not discuss Plaintiff's entitlement to fees in this case.

14